# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs March 12, 2014

## STATE OF TENNESSEE v.  JAMES H. SAINT, JR.

**Appeal from the Criminal Court for Davidson County**
**No. 2005-C-2234      Cheryl A. Blackburn, Judge**

---

**No. M2013-01511-CCA-R3-CD - Filed April 24, 2014**

---

The petitioner, James H. Saint, Jr., was convicted of six counts of aggravated sexual battery and was ordered to serve a sixty-six-year sentence.  The petitioner brings this post-conviction action where he alleges that he received the ineffective assistance of counsel in that: (1) trial counsel failed to sufficiently inform the petitioner regarding the details of his settlement offer; (2) trial counsel failed to adequately prepare both himself and the petitioner for trial; and (3) trial counsel failed to adequately cross-examine the petitioner's wife at trial.  After a thorough review of the record, we conclude that the petitioner has not established that counsel performed deficiently or that any deficiency prejudiced the petitioner.  We accordingly affirm the denial of his petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Jason Mitchell Chaffin, Nashville, Tennessee, for the appellant, James H. Saint, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Ahmed A. Safeeullah, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Brian Holmgren, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Facts and Procedural History

On October 26, 2006, a jury found the petitioner guilty of six counts of aggravated

sexual battery, Class B felonies. The trial judge sentenced the petitioner to serve eleven years for each count, with the sentences to be served consecutively, for an effective sentence of sixty-six years. The facts of that case are set forth in this court's opinion in *State v. Saint*, 284 S.W. 3d 340, 348 (Tenn. Crim. App. 2008). On direct appeal, this court affirmed the convictions but remanded the case for resentencing in accordance with the Sentencing Act as it existed at the time of the offenses. *Saint*, 284 S.W. 3d at 340. On remand, the trial court again sentenced the defendant to an effective sentence of sixty-six years, and this court affirmed the sentence. *State v. James H. Saint, Jr.,* No. M2009-01287-CCA-R3-CD, 2010 WL 2106224 (Tenn. Crim. App. May 26, 2010).

On April 16, 2012, the petitioner filed a *pro se* petition for post-conviction relief. On May 17, 2012, the trial court appointed counsel to the petitioner and on July 24, 2012, conducted a hearing to determine whether the petition was barred by the statute of limitations. The trial court determined that although the petition was filed untimely, "[d]ue process necessitate[d] Petitioner be afforded a full and fair evidentiary hearing." The petitioner then filed an amended petition for post-conviction relief, and the trial court conducted an evidentiary hearing.

At the post-conviction hearing, the trial court heard testimony from both the petitioner and his trial counsel. The petitioner testified that he did not have very strong reading comprehension skills and that his memory was poor. He felt that he suffered from memory problems, as he often had to write things down to remember them. He stated that he never received a copy of the discovery in his case before he went to trial, and that while he did meet with trial counsel prior to the trial, he did not recall reviewing or discussing the evidence against him. He further testified that he was unaware of the true nature of the allegations against him and that he only became aware of these allegations when his trial commenced and he heard the testimony of his wife and the victim. The petitioner claimed that he did not understand that he was being charged with six counts of aggravated sexual battery but rather thought that the indictment contained only one count. The petitioner further stated that he was not made aware of the potential sentence that he faced.

Prior to trial, the petitioner rejected a plea offer from the State that would have required him to serve a twelve-year sentence. He did recall discussing the State's offer with trial counsel but testified that trial counsel told him only that "if you don't take it, you'll be sorry." The petitioner testified that, during trial, it was his understanding that he would only receive a twelve-year sentence if he were convicted.

The petitioner stated that the defense's theory of the case was that the petitioner was innocent, and the petitioner proclaimed his innocence at trial. The petitioner did not recall discussing preparation for his defense with trial counsel but remembered only that when

discussing his potential testimony, trial counsel told the petitioner "just to tell the truth."

The petitioner stated that he provided trial counsel with the names of witnesses who could establish that the victim was dishonest and had problems with thievery. He testified that trial counsel may have followed up with some of the witnesses, but "not probably all of them."

On cross-examination, the petitioner reiterated that his memory was poor, and he conceded that it was possible that he did not remember meeting extensively with trial counsel and discussing trial strategy. He also conceded that it was possible that trial counsel did discuss the penalties he was facing and that he simply did not remember these discussions. He testified that the only thing he remembered about his potential sentence was when it was addressed at the conclusion of the trial. The petitioner stated that he did not know whether trial counsel discussed with him the bill of particulars that had been filed. He testified that he thought he remembered trial counsel showing him a video recording of his confession to police and that he did remember discussing with trial counsel that the trial strategy would be to suggest that the victim was lying about the accusations against the petitioner. He further stated that he remembered witnesses testifying in court but could not recall if they testified about the victim's history of dishonesty and theft.

Trial counsel testified that he assumed representation of the petitioner after the attorney initially assigned to the case resigned from the public defender's office. He stated that as part of his representation he would have discussed the petitioner's interviews with police and played the tapes of the interviews for the petitioner. He testified that he would have had the opportunity to go over discovery materials with the petitioner that had been provided in the formal discovery response and that initial trial counsel was also involved in the discussion of the discovery materials.

Referencing a letter between the petitioner and his first attorney, trial counsel determined that the petitioner received the discovery in his case on November 14, 2005, and that he returned the discovery to the public defender's office on December 15, 2005. Trial counsel testified that the petitioner had physical control of the discovery materials for a period of one month and that he later had discussions as to the various aspects of the discovery materials with the petitioner.

Trial counsel acknowledged that the petitioner had expressed difficulty in reading and understanding the discovery materials. Trial counsel made observations in his notes reflecting "a little bit of exasperation where I say, explained yet again this thing or that again regarding the proof in the case and a couple of times when [the petitioner] called and said he just didn't understand something and wanted it repeated. And so a lot of time was spent with

him trying -- trying to do that." Trial counsel testified that the petitioner's memory struggles manifested themselves in two different ways. The first was when the petitioner would request clarification on an issue that trial counsel believed that he had made clear to the petitioner. The second was the petitioner's inability to remember whether specific events occurred, a response trial counsel noted was "unusual . . . in an allegation of this nature."

Trial counsel testified that the petitioner would have "absolutely" been made aware that he was facing six counts of aggravated sexual battery. He stated that he explained to the petitioner that if he rejected the State's plea agreement and proceeded to trial that he faced the potential for consecutive sentencing. He explained on multiple occasions that the petitioner would potentially receive far more than a twelve-year sentence if he was convicted at trial. Trial counsel referenced his case notes, which mentioned specific meetings on February 4, 2006, and February 27, 2006. During the February 4 meeting, trial counsel indicated that the petitioner could receive a sentence ranging from eight to seventy-two years if convicted, and on February 27, trial counsel drew a diagram for the petitioner in an attempt to clearly explain the concept of consecutive sentencing.

Trial counsel stated that he requested and received a bill of particulars from the State and that it was his common practice to go over the bill of particulars with his clients. He further testified that he raised the inconsistencies between the bill of particulars and the actual trial testimony in his motion to dismiss and his motion for a new trial.

Trial counsel confirmed that the petitioner gave him the names of other potential witnesses and that he contacted four of these witnesses, ultimately calling two of the witnesses to testify as to the pattern of lying and stealing that the victim exhibited. He stated that these witnesses "were both very verbal, very committed to [the petitioner] and I thought particularly strong witnesses." Trial counsel recalled that a fairly extensive amount of testimony dealt with the victim's dishonesty and theft and stated that the other witnesses the petitioner recommended would have likely provided only cumulative information. Trial counsel further stated that he did not pursue every line of questioning that the petitioner suggested because he felt that it would not be relevant or admissible at trial.

Trial counsel testified that he made a demand for the production of treatment records from the victim's therapist. The trial court issued a subpoena instanter for the records, and in response, a one-page document was faxed to trial counsel, which trial counsel found was not an extensive record of treatment. During his cross-examination of the therapist, trial counsel was able to bring out the issues regarding the victim's dishonesty. He subsequently made a motion for the court to instruct the jury to disregard the testimony of the therapist, which the trial court denied. Trial counsel did not move for a mistrial after failing to obtain the therapeutic records of the victim.

Trial counsel testified that the defense's theory in this case was that the petitioner did not commit the crimes and that a potential defense was to assert that the allegations were "a plot by [the petitioner's] wife to get rid of [the petitioner]." He stated that he was trying to "tread lightly" with his cross-examination of the petitioner's wife. Trial counsel stated that because the wife "certainly" had "several things to say that were advantageous to the defense" that he wanted "to score any points that might be made from that from her before alienating her." Trial counsel agreed that his manner of cross-examining the petitioner's wife was a deliberate trial strategy.

On May 24, 2013, the trial court issued an order denying the petitioner's request for post-conviction relief. The trial court found that the petitioner had failed to prove by clear and convincing evidence that he received ineffective assistance of counsel or that he was prejudiced by any alleged deficiency. The trial court credited the testimony of trial counsel that he informed the petitioner of the nature of the charges he was facing and the potential sentences those charges carried. The trial court also credited trial counsel's testimony that he adequately prepared for trial and found that the petitioner's claim that he was unaware of the evidence against him until trial was not credible. The trial court credited trial counsel's testimony that calling further witnesses to attest to the victim's dishonesty would have been cumulative and found that it could not speculate as to the testimony of potential witnesses because the petitioner did not present any of his proposed witnesses at the evidentiary hearing. Lastly, the trial court found that trial counsel's failure to obtain the victim's treatment records did not prejudice the petitioner, nor did trial counsel's tactical decision in regards to cross-examination result in ineffective assistance of counsel that prejudiced the petitioner. On June 24, 2013, the petitioner filed a timely notice of appeal. We proceed to address his claims.

**ANALYSIS**

The petitioner contends that the post-conviction court erred in dismissing his petition because trial counsel was ineffective for: (1) failing to sufficiently inform the petitioner regarding the details of the State's settlement offer; (2) failing to prepare adequately for trial and failing to prepare the petitioner adequately for trial; (3) failing to adequately cross-examine the petitioner's wife during trial. The State asserts that the trial court properly denied the petition because the petitioner has failed to prove that trial counsel was deficient.

A claim of ineffective assistance of counsel raises a mixed question of law and fact. *Fields v. State*, 40 S.W.3d 450, 455 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). "In reviewing the application of law to factual findings to determine whether counsel's performance was deficient or whether the defendant was prejudiced by that deficiency, appellate courts should conduct a purely de novo review." *Fields*, 40 S.W.3d at

457. Appellate courts "are bound by the trial judge's findings of fact unless we conclude that the evidence contained in the record preponderates against the judgment entered in this case." *Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990).

A petitioner may obtain post-conviction relief from a conviction only when it is void or voidable due to the denial of a right under the Tennessee Constitution or the Constitution of the United States. T.C.A. § 40-30-103 (2010); *Howell v. State*, 151 S.W.3d 450, 460 (Tenn. 2004). The petitioner must prove the allegations in the petition by clear and convincing evidence. T.C.A. § 40-30-110(f); *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). This standard is met when "'there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)).

Both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee the right to counsel. The right to counsel affords an individual the right to "reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases." *Burns*, 6 S.W.3d at 461. Counsel is ineffective when "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

A claim of ineffective assistance of counsel contains two components: (1) the petitioner must show that counsel's performance was deficient in some way, and (2) the petitioner must show that the deficiency actually prejudiced the defense. *Burns*, 6 S.W.3d at 461 (citing *Strickland*, 466 U.S. at 687). To establish deficiency, the petitioner must show that counsel's errors were "so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996). The services of counsel must be "within the range of competency demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Courts evaluating the performance of an attorney "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. In order to fairly assess counsel's conduct, every effort must be made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. "The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation." *Goad*, 938 S.W.2d at 363. However, this court will defer to trial counsel's strategy and tactical choices "only if the choices are informed ones based upon adequate preparation." *Id.*

In order to show "that counsel's deficient performance prejudiced the defense, the petitioner 'must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different.'" *Pylant v. State*, 263 S.W.3d 854, 868 (Tenn. 2008) (quoting *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006)). A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Counsel's performance must be so deficient that it deprived petitioner of a fair trial and called into question the reliability of the outcome. *Id*. The petitioner must establish both components in order to succeed on his claim of ineffective assistance of counsel. *Goad*, 938 S.W.2d at 370. Failure to establish either component provides a court with sufficient basis to deny relief of the claim. *Id*.

## A. Settlement Offer

The petitioner first contends that counsel was ineffective for failing to adequately inform the petitioner as to the details of the State's plea agreement. The petitioner specifically argues that he "had no idea what his total exposure was on the charges as presented in the indictment."

The petitioner testified at the post-conviction hearing that he had a poor memory and had no recollection of trial counsel ever informing him that he was charged with six counts, rather than one, of aggravated sexual battery. He rejected an offer from the State to plead guilty in exchange for a twelve-year sentence and contends that this rejection was premised upon trial counsel's failure to explain to him that convictions on all six of the charges of aggravated sexual battery carried a maximum sentence of seventy-two years. He stated that the only comment trial counsel made in regard to the plea agreement was that "if you don't take it, you'll be sorry."

Trial counsel testified, and the post-conviction court credited his testimony, that he had multiple meetings with the petitioner to explain the nature of the charges against him and the possible sentences that could result from a conviction. In denying the petitioner's claim, the post-conviction court noted that the petitioner "conceded that he may have discussed possible penalties with [t]rial [c]ounsel that he just could not remember," and commented that trial counsel's "file notes showed that they discussed the concept of consecutive sentencing on at least two dates." We agree that the petitioner did not establish by clear and convincing evidence that trial counsel performed deficiently. Trial counsel provided specific instances when he discussed the nature of the charges against the petitioner, while the petitioner claims not to remember those discussions. Trial counsel even responded that he was "afraid [it was] true" that on multiple occasions he would have had discussions where the petitioner was apprised of the potential for receiving far more than a twelve-year sentence if he went to trial and were convicted. The post-conviction court chose to credit the

testimony of trial counsel. We conclude that the evidence does not preponderate against the post-conviction court's findings. Thus, the petitioner is entitled to no relief on this issue.

## B. Failure to Adequately Prepare for Trial

The petitioner next argues that trial counsel was ineffective because trial counsel failed to adequately prepare both himself and the petitioner for trial. Specifically, the petitioner claims that he never received any discovery materials and that trial counsel never met with him to discuss his case, did not make him fully aware of the nature of the charges against him, did not call all of the witnesses that the petitioner suggested, and failed to procure therapeutic records that would demonstrate that the victim was dishonest.

The petitioner testified that he never received a copy of the discovery materials for his trial. However, trial counsel referenced a letter from the petitioner's original counsel which stated that the petitioner received the discovery materials on November 14, 2005, and returned them on December 15, 2006. The petitioner admitted on cross-examination that it was possible that trial counsel met with him "extensively" to discuss trial strategies and sentencing and that he simply did not remember it. Trial counsel stated that while original counsel first discussed the discovery materials with the petitioner, he also reviewed the evidence with the petitioner, and that due to his poor memory the petitioner would frequently call and request repeated explanations of issues.

The petitioner testified that he provided trial counsel with a list of witnesses who would testify to the victim's dishonesty but that he was not sure if trial counsel followed up with all of these witnesses. Trial counsel indicated that he contacted four of the witnesses and called two of the witnesses to testify. He stated that the witnesses "were particularly strong witnesses" and that additional witnesses would have likely provided only cumulative testimony.

The petitioner claims that counsel was deficient for failing to acquire therapeutic records from the victim's therapist and for failing to move for a mistrial when he did not receive them. Trial counsel stated that he made a demand for the production of the records and in response to a subpoena instanter, trial counsel received only a one-page fax that constituted the treatment records, an amount trial counsel agreed was not very extensive. Trial counsel then elicited testimony from the therapist that brought out the issue of the victim's dishonesty and made a motion to have the jury disregard the testimony of the therapist.

We conclude that the petitioner has not established by clear and convincing evidence that trial counsel was inadequately prepared for trial. The evidence shows that the petitioner

did receive discovery materials, and the post-conviction court credited the testimony of trial counsel that he reviewed these materials with the petitioner. The post-conviction court also credited the testimony of trial counsel that he called two of the witnesses the petitioner suggested and that further witnesses would likely only provide cumulative testimony. Further, the petitioner has not shown by clear and convincing evidence that it was error for trial counsel to fail to request a mistrial and that this error prejudiced the petitioner. The evidence shows that the therapeutic records consisted of only a single page, that trial counsel addressed the issue of dishonesty in his cross-examination, and that he moved that the jury be instructed to disregard the testimony of the therapist. It is appropriate for a trial court to declare a mistrial "only when there is a 'manifest necessity.'" *State v. Williams*, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996) (quoting *Arnold v. State*, 563 S.W.2d 792, 794 (Tenn. Crim. App. 1977)). The petitioner has not proved that such "manifest necessity" existed in this case, and accordingly he cannot establish prejudice. Thus, we conclude that the petitioner is not entitled to any relief on this issue.

### C. Cross-Examination

The petitioner's final claim is that trial counsel failed to adequately cross-examine the petitioner's wife. Specifically, he contends that the wife had detailed and specific information about matters in this case that would have proved helpful or exculpatory to the petitioner.

Trial counsel testified that he discussed with the petitioner the possibility of utilizing the theory that the allegations against the petitioner were the fruits of a plot of his wife "to get rid of him." Trial counsel elected to "tread lightly" when cross examining the petitioner's wife because she had "several things to say that were advantageous to the defense," and he wanted "to score any points that might be made from that from her before alienating her." The post-conviction court found that trial counsel made a strategic tactical decision with his cross-examination to ensure that beneficial evidence to the defense "was reiterated before potentially alienating [the wife] with an aggressive cross-examination." "The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation." *Goad*, 938 S.W.2d at 363. Examining the conduct from trial counsel's perspective at the time, we conclude that the petitioner has not established by clear and convincing evidence that trial counsel's approach was deficient or that the approach prejudiced the petitioner. The evidence shows that trial counsel made a reasonably informed decision with his approach to the cross-examination of the petitioner's wife. Thus, the petitioner is not entitled to any relief on this claim.

**CONCLUSION**

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE